******************************************************

   The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

   All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

   The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ERIK BEE *v.* RAH EQUITY HOLDINGS, LLC, ET AL.
## (AC 48275)

Cradle, C. J., and Elgo and Westbrook, Js.

*Syllabus*

The defendants, R Co. and P Co., both Delaware limited liability companies, appealed from the trial court's interlocutory ruling on the plaintiff's motion to determine whether the parties' dispute regarding a contractual noncompete clause in the parties' agreement was arbitrable and from the court's subsequent declaratory judgment that the defendants' claims raised in a contemporaneously filed arbitration action were not arbitrable. The defendants claimed, inter alia, that the court improperly concluded that disputes over arbitrability should be decided by the court because the parties had not clearly expressed an intent to arbitrate issues of arbitrability. *Held*:

The trial court properly determined that it had the authority to decide the parties' dispute over arbitrability, as, pursuant to the controlling law in Delaware, *James & Jackson, LLC* v. *Willie Gary, LLC* (906 A.2d 76), although it was not in dispute that the arbitration provision in the parties' agreement incorporated by reference the American Arbitration Association's (AAA) commercial arbitration rules providing arbitrators with the authority to decide issues of arbitrability, it was otherwise silent as to whether disputes over arbitrability must be arbitrated or decided by a court, and the arbitration clause, when read as a whole, did not generally provide for the arbitration of any and all disputes between the parties, including claims seeking declaratory relief, and, therefore, to clearly and unmistakably establish the parties' intent to arbitrate arbitrability, the defendants needed to establish something in addition to the reference to the AAA rules, which they failed to do.

The trial court properly determined that the arbitration clause of the parties' agreement did not authorize the defendants to arbitrate claims for declaratory relief, as the arbitration clause did not broadly state that the parties agreed to arbitrate any and all disputes, rather, it imposed express limitations on what may be arbitrated and, because there was no provision authorizing arbitration of claims for declaratory judgment or empowering an arbitrator to award declaratory relief, it was reasonable to infer that the defendants' claims raised in the arbitration action fell outside the agreement and, thus, were not arbitrable.

Argued January 5—officially released August 11, 2026

*Procedural History*

Action seeking, inter alia, a judgment declaring that a certain provision of the parties' agreement was not subject to the defendants' demand for arbitration, and for other relief, brought to the Superior Court in the judicial

district of Hartford, where the court, *Smith, J.*, granted the plaintiff's motion to determine arbitrability, and the defendants appealed to this court; thereafter, the court, *Smith, J.*, granted the defendants' motion for judgment, and the defendants filed an amended appeal. *Affirmed*.

*Scott T. Garosshen*, with whom, were *Sandra Marin Lautier* and, on the brief, *Tyler G. Haas* and *Robert W. Horton*, pro hac vice, for the appellants (defendants).

*Ian E. Bjorkman*, for the appellee (plaintiff).

*Opinion*

WESTBROOK, J. In this declaratory judgment action, the defendants, RAH Equity Holdings, LLC (RAH Equity), and Premier Imaging Holdings, LLC (Premier), appeal from the trial court's interlocutory ruling on a motion filed by the plaintiff, Erik Bee, that asked the court to decide whether the parties' dispute regarding a contractual noncompete clause was arbitrable, and from the trial court's subsequent declaratory judgment that the claims raised by the defendants in a contemporaneously filed arbitration action were not arbitrable.[1] The defendants claim on appeal that the court improperly (1) concluded that the parties had not delegated to an arbitrator the authority to resolve questions of arbitrability and, thus, any such issue was properly before and decided by the court, and (2) determined that the arbitration clause in the parties' contract did not authorize the defendants to arbitrate a claim for a declaratory ruling that the plaintiff had breached the noncompete clause. For the reasons that follow, we affirm the judgment of the court.

---

[1] We do not decide whether the court's ruling on the motion to determine arbitrability was an immediately appealable final judgment because, even if this court were to determine that it lacked jurisdiction over the original appeal taken from that ruling, the defendants filed an amended appeal from the court's February 25, 2025 final declaratory judgment that incorporated the earlier ruling, and that amended appeal is properly before us. See Practice Book § 61-9; *Michaud* v. *Travelers Indemnity Co.*, 232 Conn. App. 459, 481 n.21, 336 A.3d 470 (2025).

The following facts, as found by the trial court or undisputed in the record, and procedural background are relevant to our consideration of the defendants' claims. The plaintiff, Erik Bee, is a radiologist who is licensed to practice medicine in Connecticut. The defendants are both Delaware limited liability companies. In March 2022, the plaintiff, who at that time was employed by and had ownership interests in Radiology Associates of Hartford, PLLC (Radiology Associates),[2] executed, along with the other members of Radiology Associates, a number of legal documents, including the Limited Liability Company Agreement of RAH Equity Holdings, LLC (agreement). The agreement and other documents were part of a larger purchase and sale transaction whereby, inter alia, the plaintiff became a member of RAH Equity and sold his interests in certain nonclinical assets of Radiology Associates to Premier. The agreement contained a clause whereby the plaintiff agreed that, if he left RAH Equity, he could not compete with RAH Equity or its affiliates within a specified geographic area for a period of two years (noncompete clause).[3] The agreement also

---

[2]The trial court found that Radiology Associates is "related to the defendants" but did not elaborate regarding the nature of that relationship.

[3]The noncompete clause is § 14.21 of the agreement and is titled "Restrictive Covenants." It provides in relevant part: "(a) Other than on behalf of the Company or its Affiliates, no Member shall, either directly or indirectly, individually or by or through any Covered Entity or in collaboration with an Affiliate, whether for pay or otherwise, for such Member's applicable Restricted Period:

"(i) form or assist others in forming, own any interest in, manage, be employed by, perform services for, become an employee, officer, director or consultant for, invest in (whether through debt or equity securities), otherwise assist (financially or otherwise), or lend such person's name, counsel or assistance to any Competitor . . . ."

Article I of the agreement defines "Restricted Period" to include the time someone is a member "and for two (2) years thereafter . . . ." A "Competitor" is defined in the agreement as "any person or entity that engages in Restricted Activities within the Territory." "Restricted Activities" are defined as, inter alia, "providing, supervising, managing or arranging for radiology services . . . ." The "Territory" is defined as Saint Francis Hospital, Johnson Memorial Hospital, Mount Sinai Rehabilitation Hospital, Avon Imaging Center, Bloomfield Imaging Center, Enfield Imaging Center, Glastonbury Imaging Center, Rocky Hill Imaging Center, and any other facilities at which RAH Equity

contained an arbitration clause that incorporated by reference the commercial arbitration rules of the American Arbitration Association (AAA).[4]

On April 21, 2023, the plaintiff gave notice to Radiology Associates that he intended to resign effective April 21, 2024. The plaintiff resigned as planned and, as of April 22, 2024, became employed by another medical practice, Radiologic Associates of Middletown.

On or about March 27, 2024, the defendants initiated arbitration proceedings with the AAA against the plaintiff in which they sought "a declaration that [the noncompete clause] is enforceable and that [the plaintiff's] employment with Radiologic Associates of Middletown" was in breach of the agreement's noncompete clause. The defendants, on April 2, 2024, served the plaintiff with a statement of claim and a demand that the plaintiff submit to arbitration.

In response to the demand for arbitration, on April 27, 2024, the plaintiff commenced the underlying declaratory judgment action in which he challenged the validity of the defendants' demand for arbitration and the arbitrability of the defendants' claims. By way of relief,

or its affiliates had rendered services during a member's last year of employment or at which they had signed or been awarded a contract, plus a twenty-five mile radius from all such facilities.

[4]The arbitration clause provides in relevant part: "Any unresolved controversy or claim arising from or relating to this Agreement or breach thereof shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, then in effect. The decision of arbitration shall be final and conclusive upon the parties and judgment upon the award rendered by the arbitrator may be entered in any court having competent jurisdiction. The arbitration proceedings shall be held in Hartford Connecticut . . . . The arbitrator shall have authority to award only (a) money damages, (b) attorneys' fees, costs and expert witness fees to the prevailing party, and (c) sanctions for abuse or frustration of the arbitration process. The arbitrator's compensation, and the administrative costs of the arbitration, shall be borne by the parties in the manner set forth in the arbitration award, as determined by the arbitrator. Notwithstanding the foregoing provisions . . . the parties are not required to arbitrate any issue for which injunctive relief is sought by any party hereto and any party may seek injunctive relief in any federal or state court having competent jurisdiction."

the plaintiff sought a judicial determination that he was not subject to the defendants' arbitration action because the arbitrators lacked the authority to issue the requested declaratory relief, an order staying the defendants' arbitration action, and an order enjoining the defendants from proceeding with the arbitration action against the plaintiff.

On May 14, 2024, the plaintiff, citing General Statutes § 52-407*gg* (b),[5] filed a motion asking the court to determine arbitrability. He subsequently filed a supporting memorandum of law.[6] The plaintiff argued that the court, and not an arbitrator, should decide the threshold issue of whether the claims raised by the defendants in their arbitration action, which only sought declaratory relief,[7] were arbitrable. The defendants filed an opposition to the plaintiff's motion on May 23, 2024, in which they argued that the parties had agreed to arbitrate any issue of arbitrability and, even if the court were to decide arbitrability, their claims before the AAA arbitrators were arbitrable under the parties' agreement. The plaintiff thereafter filed a reply memorandum. The court, *Smith*, *J.*, heard oral argument on the plaintiff's motion on July 29, 2024.

[5]General Statutes § 52-407gg (b) provides: "On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue. If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate."

[6]In his memorandum of law, the plaintiff states that the noncompete clause is invalid and unenforceable. In support of that position, the plaintiff relies on General Statutes § 20-14p (b) (2), which prohibits covenants not to compete involving physicians that restrict activities for more than one year or cover a territory exceeding a fifteen mile radius. The plaintiff also references rules previously adopted by the Federal Trade Commission that, with some exceptions, would have barred noncompete clauses nationwide as unfair methods of competition. See 16 C.F.R. § 910 (2024). We note that those rules never took effect because they were set aside by court order; see *Ryan, LLC* v. *Federal Trade Commission*, 746 F. Supp. 3d 369, 390 (N.D. Tex. 2024); and eventually rescinded by the agency. See 91 Fed. Reg. 6510 (February 12, 2026). The validity of the noncompete clause is not before us in the present appeal.

[7]In their statement of claim filed with the AAA, the defendants did not seek an award of compensatory damages or any other form of relief other than a declaratory judgment.

The court issued a memorandum of decision on the motion to determine arbitrability on November 20, 2024. The court first determined that, in accordance with an express provision in the agreement,[8] it would apply Delaware substantive law with respect to whether the court or an arbitrator should decide the question of arbitrability and whether the defendants' arbitration claims were arbitrable. The court concluded, however, that Connecticut law governed any procedural issues, which included whether the court should compel or stay the arbitration proceedings commenced by the defendants.

Next, applying what the court determined was governing Delaware law; see, e.*g.*, *James & Jackson, LLC* v. *Willie Gary, LLC*, 906 A.2d 76 (Del. 2006); the court agreed with the argument of the plaintiff that, although the agreement's arbitration provision incorporated by reference AAA commercial arbitration rules, which generally authorized an arbitrator to resolve issues of arbitrability, the agreement otherwise was silent as to who should decide issues of arbitrability. Further, because the arbitration provision did not contain broad language that *all disputes* were subject to arbitration but, to the contrary, expressly exempted certain matters from arbitration, the language of the agreement did not clearly and unmistakably establish the parties' intent to arbitrate the question of arbitrability, which standard, the court concluded, must be met to overcome the presumption that a court ordinarily decides issues of arbitrability.

Having decided that the issue of arbitrability properly was before it, the court then turned to whether the parties had agreed to arbitrate the particular claim the defendants had raised in their arbitration action before the AAA. The court concluded that they did not. First, the court noted that the defendants' demand for arbitration only sought declaratory relief from the arbitrators,

[8]Section 14.8 of the agreement, titled "Applicable Law" provides: "All questions concerning the construction, validity and interpretation of this Agreement shall be governed by the internal law, and not the law of conflicts, of the State of Delaware."

but the agreement's arbitration provision contained no reference to declaratory judgments or declaratory relief, and specifically limited the arbitrators' authority to awards of "(a) money damages, (b) attorneys' fees, costs and expert witness fees to the prevailing party, and (c) sanctions for abuse or frustration of the arbitration process." Because the court concluded that the AAA arbitrators were not empowered to award the declaratory relief sought by the defendants, it further concluded that "any attempt by the arbitrator to render such an award would be an abuse of the arbitrator's authority" and would render the award subject to vacatur under General Statutes § 52-407ww (a) (4).[9] On the basis of the trial court's review of "the plain language of the parties' agreement," it concluded that "the defendants' claim for declaratory relief in the related arbitration proceeding is not arbitrable." The defendants filed the present appeal challenging the court's ruling on the plaintiff's motion. See footnote 1 of this opinion.

On December 20, 2024, the defendants filed a motion for articulation in which they asked the trial court whether its November 20, 2024 decision had either stayed or enjoined the parties' AAA arbitration proceedings, whether its decision "fully and finally resolve[d] the dispute between the parties in this lawsuit as to arbitrability," and whether any claims in the underlying declaratory judgment action remained "live." The plaintiff opposed the motion for articulation, arguing that there was no reason the court needed to clarify or articulate its decision. The court denied the motion for articulation on January 16, 2025.[10]

On January 30, 2025, the defendants filed with the trial court a motion for judgment in which they moved the

---

[9]General Statutes § 52-407ww (a) provides in relevant part: "Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if . . . (4) An arbitrator exceeded the arbitrator's powers . . . ."

[10]The court explained as follows: "The court issued a memorandum of decision on November 20, 2024 . . . deciding the two specific issues presented by the plaintiff's motion brought under . . . § 52-407gg (b);

court "to issue judgment, formally, consistent with its November 20, 2024 decision," noting that "[t]he court's November 20 decision granted the precise declaratory relief that [the plaintiff] sought in his single count complaint" and that, "[b]ecause the single count complaint raises no other claims to adjudicate, [the trial court] should issue judgment formally **(1)** granting [the plaintiff's] claim for declaratory relief, and **(2)** clarifying that no other claims remain." On February 25, 2025, the court issued the following order: "The court, being satisfied that the requirements of General Statutes § 52-29 and Practice Book § 17-54 et seq. have been met, hereby grants the defendants' motion for judgment . . . . Accordingly, the court declares that the claims brought by the defendants in the arbitration [before the AAA], are not arbitrable for the reasons set forth in the court's memorandum of decision . . . on the plaintiff's motion to determine arbitrability . . . . Further, having been apprised by all parties that the [AAA] has dismissed the arbitration, the court hereby denies the plaintiff's requests for a stay and injunctive relief as moot. The plaintiff's request for an award of attorney's fees is hereby denied." **(Citations omitted.)** The defendants filed an amended appeal from the court's February 25, 2025 judgment.

I

The defendants first claim that the court improperly concluded that disputes over arbitrability should be decided by the court because the parties had not clearly expressed an intent to arbitrate issues of arbitrability.

namely: **(1)** whether the court or an arbitrator decides the question of arbitrability in this case, and **(2)** if the court decides, whether the substance of the parties' dispute in this case is subject to mandatory arbitration. These two specific issues were extensively briefed by the parties in their related filings . . . and addressed by the parties at oral argument. The court issued a memorandum of decision, which sets forth the court's reasoning. There are no other motions pending before this court at the present time." (Citations omitted.)

The defendant filed a motion for review with this court pursuant to Practice Book § 66-7 but later withdrew that motion.

The plaintiff argues, to the contrary, that the court properly concluded that it was empowered to determine arbitrability. We agree with the plaintiff.

As a preliminary matter, we note that the trial court applied Delaware law with respect to whether the court or an arbitrator should decide arbitrability, and the parties agree that Delaware law controls the resolution of that issue. Because no claim of error regarding the court's choice of law decision is raised on appeal, and application of Delaware law comports with the parties' agreement; see footnote 8 of this opinion; we apply Delaware substantive law regarding this claim. Procedural issues, however, which include the applicable standard of review, are governed by Connecticut law. See *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 603, 211 A.3d 976 (2019).

"Arbitrability refers to whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . . Two distinct issues arise when addressing the question of arbitrability: (1) whether the parties agreed to arbitrate the underlying merits of the case, i.e., whether the matter is arbitrable; [and] (2) who has the primary authority to decide that question—the arbitrator or the court . . . . Generally, the second question—who is to decide whether a dispute is arbitrable—must be examined prior to the question of whether the dispute is arbitrable." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Brownstone Exploration & Discovery Park, LLC* v. *Borodkin*, 220 Conn. App. 806, 813–14, 299 A.3d 1189 (2023).[11] "[W]hether the court correctly concluded that

[11] Our Supreme Court has described two procedural routes that a party may take to obtain a judicial determination regarding the arbitrability of a particular dispute. "First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute." (Internal quotation marks omitted.) *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 709, 987 A.2d 348 (2010).

Although we apply Delaware law in this appeal, we note that applicable Connecticut law would not mandate a different result. "[T]he general

it was up to it, not the arbitrators, to decide arbitrability is a question of law [over which] our standard of review is de novo." Id., 813. To the extent that a court must determine whether parties to an arbitration clause agreed to submit the issue of arbitrability to arbitrators rather than the court, this raises an issue of contract interpretation. See *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 231, 951 A.2d 1249 (2008) (principles of contract interpretation apply to construction of arbitration agreements). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact [subject to the clearly erroneous standard of review] . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary] . . . ." (Internal quotation marks omitted.) *Fischer* v. *People's United Bank, N.A.*, 216 Conn. App. 426, 438, 285 A.3d 421 (2022), cert. denied, 346 Conn. 904, 287 A.3d 136 (2023).

Our Supreme Court recently set forth the legal standard that Delaware courts apply to interpret contracts.

rule is that the court is responsible for deciding whether a dispute is arbitrable absent the parties' contrary intent . . . . [T]he language of the contract, [however], controls . . . . Parties to an arbitration agreement may provide in their agreement that the arbitrating body, rather than a court, shall interpret the arbitration agreement to determine whether the issue in dispute is within the purview of the parties' undertaking to arbitrate. . . . They can do so by including in their arbitration agreement *an express provision to that effect* or, alternatively, through the *use of broad terms to describe the scope of arbitration, such as all questions in dispute and all claims arising out of the contract or any dispute that cannot be adjudicated. . . .*

"If there is clea[r] and unmistakabl[e] evidence that the parties have agreed to arbitrate the issue of arbitrability . . . then the court must issue an order compelling arbitration without further consideration of the scope of the agreement to arbitrate. . . . Conversely, if the agreement is ambiguous as to who, i.e., the arbitrating body or the court, is to interpret the arbitration agreement to determine whether the agreement provides for arbitration of the issue in dispute . . . [then] the court, not the arbitrating body, initially interprets the arbitration agreement to make that determination." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Brownstone Exploration & Discovery Park, LLC* v. *Borodkin*, supra, 220 Conn. App. 814–15.

See *Clinton* v. *Aspinwall*, 352 Conn. 597, 338 A.3d 1103 (2025). "Under Delaware law . . . courts start with the text to determine what the contractual parties intended. . . . In upholding the intentions of the parties, [Delaware] court[s] . . . construe the agreement as a whole, giving effect to all provisions therein. . . . To aid in the interpretation of the text's meaning, Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party. . . . When the contract is clear and unambiguous, [Delaware courts] will give effect to the [plain meaning] of the contract's terms and provisions, without resort to extrinsic evidence. . . . Delaware courts do not consider extrinsic evidence unless [they] find that the text is ambiguous. Ambiguity is present only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. Critically, a contractual provision is not rendered ambiguous simply because the parties in litigation differ as to the proper interpretation." (Citations omitted; internal quotation marks omitted.) Id., 608–609.

The Delaware Supreme Court in *James & Jackson, LLC* v. *Willie Gary, LLC*, supra, 906 A.2d 76, addressed a situation similar to the one now before us, namely, review of a trial court's conclusion that the court, and not an arbitrator, should decide whether claims were arbitrable under a written arbitration agreement. Like the agreement now before this court, the arbitration agreement at issue in *James & Jackson, LLC,* contained no express provision regarding who the parties intended to resolve disputes over arbitrability, but it incorporated a set of AAA arbitral rules that authorized an arbitrator to determine arbitrability. See id., 80. The Delaware Supreme Court stated that it generally agreed with the trial court's analysis that the court, not an arbitrator, should decide the parties' dispute over whether the defendant's claims should be arbitrated, and elected to "write separately only to address the significance that should be

attributed to reference to the AAA rules in an arbitration clause." Id.

The court in *James & Jackson, LLC,* set forth the following general principles: "Delaware arbitration law mirrors federal law: [The Delaware Supreme Court] has recognized that the public policy of Delaware favors arbitration. A party cannot be forced to arbitrate the merits of a dispute, however, in the absence of a clear expression of such intent in a valid agreement. . . . Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question of who has the primary power to decide arbitrability turns upon what the parties agreed about that matter. . . . [T]he United States Supreme Court held that courts should not presume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable evidence that they did so*. In applying the clear and unmistakable standard, most courts have held that, when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." (Emphasis added; footnote omitted; internal quotation marks omitted.) Id., 79. The court held that, "[a]s a matter of policy, we adopt the majority federal view that reference to the AAA rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator. We do so in the belief that Delaware benefits from adopting a widely held interpretation of the applicable rule, as long as that interpretation is not unreasonable. The majority view does not, however, mandate that arbitrators decide arbitrability in *all* cases where an arbitration clause incorporates the AAA rules. Rather, [the majority view] applies in those cases where the arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability." (Emphasis in original.) Id., 80.

The court explained that, although the arbitration clause before it required arbitration of any controversy arising out of or relating to the parties' agreement in accordance with the AAA rules, the arbitration clause went on to authorize the nonbreaching party "to obtain injunctive relief and specific performance in the courts. Thus, despite the broad language at the outset, not all disputes must be referred to arbitration. *Since this arbitration clause does not generally refer all controversies to arbitration, the federal majority rule does not apply, and something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator.* There being no such clear and unmistakable evidence of intent, the trial court properly undertook the determination of substantive arbitrability." (Emphasis added.) Id., 81. The holding in *James & Jackson, LLC,* remains the controlling law of Delaware on this subject matter.

Accordingly, pursuant to *James & Jackson, LLC*, if an arbitration agreement or clause incorporates by reference the AAA's arbitration rules or a "set of arbitration rules that empower arbitrators to decide arbitrability," but otherwise is silent on who determines substantive arbitrability, then a reviewing court must determine whether "the arbitration clause generally provides for arbitration of all disputes . . . ." Id., 80. If it does, then the parties are deemed to have agreed to arbitrate any dispute over arbitrability in accordance with the rules that they broadly incorporated. See id. If it does not, then "something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator." Id., 81. Absent that, the default rule would apply, and the court would decide arbitrability.[12]

Applying *James & Jackson, LLC,* in the present case to the language of the parties' arbitration agreement, we are convinced that the trial court properly determined that it had the authority to decide in the first instance

---

[12]See footnote 11 of this opinion.

disputes over arbitrability. It is not in dispute that the agreement's arbitration provision incorporates by reference the AAA's commercial arbitration rules or that those rules generally provide arbitrators with the authority to decide issues of arbitrability.[13] The agreement, however, is otherwise silent as to whether disputes over arbitrability must be arbitrated or decided by a court. Certainly, there is no express provision addressing arbitrability or any other clear and unambiguous expression of the parties' intent on that subject.

Additionally, we agree with the plaintiff and the trial court that the arbitration clause, read as a whole, does not generally provide for the arbitration of any and all disputes between the parties. First, the arbitration clause provides in relevant part that arbitration is limited to "[a]ny unresolved controversy or claim arising from or relating to this Agreement or breach thereof . . . ." As the trial court indicated, the parties use of the term "unresolved" to modify the phrase "[a]ny . . . controversy or claim" suggests that the parties did not intend arbitration to be the sole means of dispute resolution as contemplated by the parties. See *Sunline Commercial Carriers, Inc.* v. *CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) (contracts must be read as whole and meaning given to each term so as to "[avoid] an interpretation that would render any term mere surplusage" (internal quotation marks omitted)). Second, and perhaps more

---

[13]As previously noted, the arbitration clause provided that disputes arising out of the parties' agreements "shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, then in effect." See footnote 4 of this opinion. Rule 7 (a) of the AAA's Commercial Arbitration Rules and Mediation Procedures, which were last amended on September 1, 2022, and thus "in effect" when the defendants commenced their arbitration action, provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7 (a), p.14, available at https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf (last visited August 6, 2026).

significantly, there is language in the arbitration clause that limits arbitration to resolution of claims seeking awards of "(a) money damages, (b) attorneys' fees, costs and expert witness fees to the prevailing party, and (c) sanctions for abuse or frustration of the arbitration process." There is no express language that refers to arbitration of any and all controversies, including claims seeking declaratory relief. Last, and relatedly, there is language in the agreement that authorizes the parties to seek injunctive relief in a federal or state court having competent jurisdiction. We agree with the trial court's assessment that "[t]his carve out language is similar to the carve out language in the arbitration provision at issue in [*James & Jackson, LLC*], which expressly authoriz[ed] the [parties] to obtain injunctive relief and specific performance in the courts and confirmed that the arbitration clause did not generally refer all controversies to arbitration." (Internal quotation marks omitted.) See *James & Jackson, LLC* v. *Willie Gary, LLC*, supra, 906 A.2d 81. Therefore, to "clearly and unmistakably" establish the parties' intent to arbitrate arbitrability, the defendants needed to establish something in addition to the reference to the AAA rules, which they have failed to do.[14]

The defendants draw our attention to several opinions of lower Delaware courts that have distinguished the holding in *James & Jackson, LLC*, and concluded that, despite an arbitration agreement having language that carved out claims of equitable relief as subject to binding arbitration, such language was insufficient to overcome the effect of the incorporation of the AAA rules and the use of broad language calling for arbitration of all disputes arising under the agreement. See *Blackmon*

[14]As the trial court noted in its decision, the defendants took the position that the arbitration provision generally did provide for arbitration of all disputes, and they did not argue or attempt to establish before the trial court "that, if the [agreement's] arbitration provision generally *does not* provide for arbitration of all disputes, then something other than the parties' incorporation of the AAA rules within the [agreement] evidences the parties' clear and unmistakable intent to arbitrate substantive arbitrability." (Emphasis added; internal quotation marks omitted.)

v. *O3 Insight, Inc.*, , Civ. No. 2020-1014-SG, 2021 WL 868559, *3 (Del. Ch. March 9, 2021); *BAYPO Ltd. Partnership* v. *Technology JV, LP*, 940 A.2d 20, 26–27 (Del. Ch. 2007) (*BAYPO*). We are not persuaded that these cases should alter our reliance on the holding in *James & Jackson, LLC*, as a basis for rejecting the defendants' appellate claim.

In *Blackmon*, the chancery court concluded that, despite the agreement containing a carve out that permitted the parties to pursue equitable relief in court, "the carveouts and exceptions to committing disputes to arbitration [were not] so obviously broad and substantial as to overcome a heavy presumption that the parties agreed by referencing the AAA Rules and deciding to use AAA arbitration to resolve a wide range of disputes that the arbitrator, and not a court, would resolve disputes about substantive arbitrability." (Internal quotation marks omitted.) *Blackmon* v. *O3 Insight, Inc.*, supra, 2021 WL 868559, *3. Similarly, in *BAYPO*, the arbitration agreement at issue provided that "[t]he dispute resolution provisions . . . shall be the binding and exclusive means to resolve all disputes arising under the [a]greement . . . provided, however, that [the dispute resolution procedures] shall not limit either party's recourse to courts of competent jurisdiction for injunctive or equitable relief that may be necessary to protect the rights and property of such party or maintain the status quo before, during or after the pendency of the process set forth in [the dispute resolution procedures]." (Emphasis omitted; internal quotation marks omitted.) *BAYPO Ltd. Partnership* v. *Technology JV, LP*, supra, 940 A.2d 23. The agreement in *BAYPO* also contained language that "[t]he [a]rbitrators shall decide all [d]isputes and all substantive and procedural issues related thereto . . . ." (Emphasis omitted; internal quotation marks omitted.) Id.

The decisions in *Blackmon* and *BAYPO*, including their interpretation and application of the holding in

*James & Jackson, LLC*, are not binding on this court.[15] More importantly, the arbitration provisions in the present case are not like those found in *Blackmon* and *BAYPO*, and, accordingly, the resolution reached by the courts in those cases are readily distinguishable and have little bearing on our analysis, which must interpret the language of the arbitration clause before us. As we have already concluded, unlike in *Blackmon* and *BAYPO*, the arbitration clause in the present agreement does not generally provide for arbitration of all disputes, and because the defendants have not identified anything other than the incorporation of the AAA rules from which to conclude that it was the clear and unmistakable intent of the parties to arbitrate questions of arbitrability, which ordinarily would be subject to adjudication by the courts, we conclude that the court properly determined that the parties' dispute over arbitrability was properly before the court.

## II

The defendants next claim that, even if the court properly determined that it could decide whether the defendants' claims were arbitrable under the agreement, the court improperly determined that the arbitration clause

---

[15]We also agree with the plaintiff that, to the extent the defendants rely on language in *McLaughlin* v. *McCann*, 942 A.2d 616 (Del. Ch. 2008), in which the chancery court criticizes the Delaware Supreme Court's analysis in *James & Jackson, LLC*, that reliance is misplaced. In *McLaughlin*, the chancery court states in relevant part: "I confess that I find the standard adopted by the Delaware Supreme Court in [*James & Jackson, LLC*] a bit puzzling because, if read with great literality, it defeats the efficiency rationale that underlies the federal majority view. . . . I also find the . . . requirement that the arbitration clause generally provides for arbitration of all disputes less than clear. One might interpret that requirement to mean that an arbitration clause must refer all disputes to arbitration without exception for the federal majority view to apply. Although I acknowledge that that interpretation is a plausible one, there are several reasons I do not believe that is what the Delaware Supreme Court meant when it adopted that standard." (Footnotes omitted; internal quotation marks omitted.) Id., 623–24. As a lower court, the criticisms of the chancery court in *McLaughlin* have no sway on our application of *James & Jackson, LLC*, and thus are immaterial.

did not authorize the defendants to arbitrate claims for declaratory relief. We disagree.

"Whether a dispute is arbitrable generally is a question of law over which our review is plenary." *Board of Education* v. *Wallingford Education Assn.*, 271 Conn. 634, 639, 858 A.2d 762 (2004). "[C]ontracting parties who provide for the arbitration of disputes in their agreements need submit to arbitration only those claims that touch on the legal rights created by their contract." *Parfi Holding AB* v. *Mirror Image Internet, Inc.*, 817 A.2d 149, 151 (Del. 2002), cert. denied, 538 U.S. 1032, 123 S. Ct. 2076, 155 L. Ed. 2d 1061 (2003). "[If] parties to an agreement decide that they will submit their claims to arbitration, Delaware courts strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration. Nevertheless, arbitration is a mechanism of dispute resolution created by contract. An arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement. Thus, arbitration clauses should be applied only to claims that bear on the duties and obligations under the [a]greement. The policy that favors alternate dispute resolution mechanisms, such as arbitration, does not trump basic principles of contract interpretation." (Footnotes omitted.) Id., 155–56.

"[Any time] the arbitrability of a claim is disputed, the court is faced with two issues. First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract. If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance." Id., 155.

Turning to the present case, as we discussed in part I of this opinion, the arbitration clause at issue does not broadly state that the parties agree to arbitrate any and all disputes. Rather, it imposes express limitations on what may be arbitrated and, thus, we view the clause to be more narrow than broad in scope. Applying that scope to the claim that the defendants raised in their arbitration action, we note that the defendants sought only declaratory relief from the arbitrator and nothing more. As previously stated, the agreement's arbitration clause expressly limits the arbitrator's authority to awards for "(a) money damages, (b) attorneys' fees, costs and expert witness fees to the prevailing party, and (c) sanctions for abuse or frustration of the arbitration process." Because there is no provision authorizing arbitration of claims for declaratory judgment or empowering an arbitrator to award declaratory relief, it is reasonable to infer that the defendants' claims raised in the arbitration action fell outside the arbitration agreement and, thus, were not arbitrable.

The defendants argue, as they did to the trial court, that it is of no moment that declaratory relief is not among the enumerated remedies that an arbitrator may award because any limitation on the type of relief available has no bearing on whether the subject matter of the claim falls within the scope of the parties' agreement to submit to arbitration. That may very well be true if the demand for arbitration had, in addition to declaratory relief, also sought another form of relief or raises another claim that was authorized by the arbitration agreement, such as money damages. We reject the argument in the present case, however, because, unlike the nonbinding authority relied on by the defendants, a declaratory judgment was the only claim raised in the defendants' demand for arbitration and, thus, the only possible award that could result from an arbitration was an award of declaratory relief.[16]

---

[16]The defendants cite several cases from the chancery court to support their argument that limitations on the form of liability available at arbitration does not restrict an arbitrator's authority to decide a

The defendants' arbitration claim seeks declaratory relief whereas the arbitration provision of the parties' agreement does not grant an arbitrator the authority to award such relief. Accordingly, we agree with the trial court that an award of declaratory relief would fall outside of the submission and thus beyond the authority of the arbitrators to issue, and any such award would be subject to vacatur pursuant to § 52-407ww (a) (4) (authorizing court to vacate award if arbitrator exceeds power granted by arbitration agreement). On the basis of our review of the plain and unambiguous language of the parties' agreement, we conclude that the defendants' claim seeking declaratory relief was not arbitrable.

The judgment is affirmed.

In this opinion the other judges concurred.

---

particular claim that generally falls within the subject matter of the arbitration clause. As aptly explained by the trial court in rejecting the same argument, the defendants cite to cases in which a court permitted an arbitration to proceed despite the claimant's demand having sought a remedy that was not recoverable because the demand also included a claim that undoubtedly was arbitrable. See *Medtronic Vascular, Inc.* v. *NanoMedSystems, Inc.*, Civ. No. 8888, 2014 WL 795077, *2 (Del. Ch. January 27, 2014); *United Engineers & Constructors, Inc.* v. *Imo Industries, Inc.*, Civ. No. 12611, 1993 WL 43016, *7 (Del. Ch. February 16, 1993). These cases are distinguishable from the present case in which the defendants' only claim for relief falls outside the scope of the arbitrator's authority under the submission as unambiguously set forth in the arbitration agreement.